# In the United States Court of Federal Claims

Case No. 04-1544L
Filed:  June 20, 2011
NOT FOR PUBLICATION

```
**************************************************************
```

| | |
|---|---|
| THE ELLAMAE PHILLIPS COMPANY, | * |
| a Colorado Registered Limited Liability | * |
| Partnership, | * |
| *Plaintiff,* | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES OF AMERICA, | * |
| *Defendant.* | * |

```
**************************************************************
```

**Cecilia Fox**, Washington, D.C., Counsel of Record for Plaintiff.  **George M. Allen,** Of Counsel.

**William J. Shapiro**, Environment & Natural Resources Division, Natural Resources Section, U.S. Department of Justice.  With him on the briefs were **Ronald J. Tenpas**, Acting Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, and **Evelyn G. Kitay**, Of Counsel, Surface Transportation Board.

**Amelia Moorstein**, law clerk.

## OPINION ON REMAND

**BASKIR, Judge.**

I.  Introduction

        This is a Rails-to-Trails case.  We previously entered judgment for the Plaintiff, concluding Defendant had taken Plaintiff's property interests by converting a railway easement to a "recreational easement."  *Ellamae Phillips v. United States,* 77 Fed. Cl. 387 (2007) (*Ellamae I*).  We authorized an interlocutory appeal.  On appeal, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) vacated judgment and remanded for our consideration of the scope of the railway easement, and contingently, whether the easement had been abandoned.  *Ellamae Phillips v. United States,* 564 F.3d 1367 (Fed. Cir. 2009) (*Ellamae II*).

Upon further consideration of the parties' submissions on these issues and after further argument, we respond as follows:

> The Defendant's railway easement does not include a recreational trail within its scope.
> As for the contingent issue of abandonment, we note that the parties do not contend that the railway easement has been abandoned.

## II.  Factual Background

The following facts are set forth in both *Ellamae I* and *Ellamae II,* but we recite them again for the convenience of the reader.  Plaintiff's 2004 Complaint alleged that the conversion of a railroad right of way on plaintiff's land to a biking and hiking trail constituted a Fifth Amendment taking.

The Grand Valley Railway Company was granted a right of way in 1886 pursuant to the General Railroad Right of Way Act of March 3, 1875, ch. 152, 18 Stat. 482 (codified at 43 U.S.C. §§ 934-939 (1982)) ("the 1875 Act"), and it finished construction of the railroad on this right of way in 1887.  Pursuant to the Act of June 11, 1906 (34 Stat. 233), the United States issued a patent deed on December 21, 1923, to Joseph Diemoz for the tract of land now owned by plaintiff.  Plaintiff is the successor in interest to Mr. Diemoz's patent and the Denver & Rio Grande Western Railroad is the successor in interest to the Grand Valley Railway Company's right of way.

The alleged taking occurred pursuant to the National Trails System Act, Pub. L. No. 90-543, 83 Stat. 919 (1968) (codified as amended at 16 U.S.C. §§1241-51 (2006)) ("Trails Act").  The Trails Act authorized the Surface Transportation Board (STB) to preserve unused railway rights of way for future use and use them as recreational trails in the interim; this process is referred to as "railbanking."  The Trails Act provided that interim trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights of way for railroad purposes."  16 U.S.C. § 1247(d).

In order to effectively railbank a rail line, the railroad company must submit an abandonment application or a request for an exemption to the abandonment process. *See* 49 C.F.R. § 1152.29(c).  A potential trail sponsor must file comments with the STB indicating an interest in interim trail use and provide a statement of willingness to assume managerial, legal, and tax responsibility for the right of way.  49 C.F.R. § 1152.29(a).  If the railroad agrees to negotiate a railbanking agreement, the STB will issue a Notice of Interim Trail Use or Abandonment (NITU) to the railroad.  49 C.F.R. § 1152.29(d)(1).  A railroad may either enter into an agreement with an interested trail group or abandon the line if they do not reach an agreement within 180 days after the NITU is issued.  *Id.*

In 1998, the Roaring Fork Railroad Holding Authority (RFRHA) acquired the Denver & Rio Grande's interest in the subject corridor and stated it was "formed to acquire the rail line in order to ensure its preservation for rail and other compatible public purposes." Def. Ex. 8 at DOJ061. RFRHA submitted a Petition for Exemption to the STB on June 30, 1998, as well as a "Statement of Willingness to Assume Financial Responsibility." The STB issued a NITU on October 15, 1998. The Roaring Fork Transportation Authority (RFTA) replaced RHRHA as the "interim trail user" in 2001. Def. Ex. 11 at DOJ188.

In 1995, plaintiff brought suit claiming that the Denver & Rio Grande Western Railroad had abandoned the line and that title to the right of way should revert to plaintiff. The United States District Court for the District of Colorado held that the Denver & Rio Grande Western Railroad had not abandoned its interest before October 4, 1988. *Phillips Co. v. S. Pac. Rail Corp.*, 902 F. Supp 1310, 1315. Plaintiff now concedes that the railway did not abandon the right of way before implementation of the Trails Act and that operation of the Trails Act itself does not constitute abandonment.

III.   Procedural Background

In 2007, we granted plaintiff's Motion for Summary Judgment and found that the railroad had abandoned the easement across plaintiff's land and that the subsequent use of this land as a public trail constituted a taking. *Ellamae I*.

Our decision was based on the holding in *Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005). *Hash* discussed the ownership interests of "Category 1" landowners. Category 1 land was initially public, and the landowners who acquired the public land pursuant to the Homestead Act of 1862, 12 Stat. 392 (codified as 43 U.S.C. §161 (enacted 1891)) (repealed Pub. L. No. 94-579, 90 Stat. 2787 (1976)) received property already encumbered by 1875 Act easements. The Federal Circuit in *Hash* held that the 1875 Act granted the railroad an easement subject to the fee simple held by the Category 1 landowners. When the railroad abandoned the right of way, the owners were disencumbered of the railway easement, and the subsequent conversion of the land into a public trail constituted a taking. *Hash*, 403 F. 3d at 1318.

Our case also involves a Category 1 landowner, and we concluded that *Hash* held conversions of 1875 Act rights of way to trail use in Category 1 situations constituted abandonment and gave rise to takings liability *as a matter of law*. In light of our interpretation of *Hash*, we held that the conversion of plaintiff's land from a railroad to a trail was a taking and granted plaintiff's Cross Motion for Summary Judgment. Defendant appealed our decision to the Federal Circuit.

The issue on appeal was whether *Hash* dictated a finding of takings liability in all Category 1 conversions. In *Ellamae II*, the Court held that *Hash* had clearly determined the railroad had an easement over the land of Category 1 landowners and that the landowners held the reversionary interest in the easement; but *Hash* did not hold that

conversions of Category 1 land from a railroad to a public trail under the Trails Act was a taking *per se*.  The Federal Circuit determined that *Hash* held a taking had occurred because the right of way had previously been abandoned, but a finding of abandonment would vary from case to case depending on the facts.  The Federal Circuit also held that *Hash* did not determine the scope of the easement granted under the 1875 Act – specifically, whether the grant was broader than or limited to railroad use.  Because the finding of takings liability in *Hash* rested on a determination of abandonment limited to the facts of that case and *Ellamae I* did not address the scope of the easement, the Federal Circuit vacated our order and remanded the case with instructions.

IV.   Legal Standards

Summary judgment may be granted only where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue.  *Id.* at 324.

In considering a motion for summary judgment, the Court must believe any evidence presented by the non-moving party.  *See Anderson,* 477 U.S. at 255; *Chiuminata Concrete Concepts, Inc. v. Cardine Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998).  The Court must also draw all reasonable inferences in the non-moving party's favor.  *See Anderson,* 477 U.S. at 255; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed. Cir. 1984) (non-moving party entitled to "all applicable presumptions, inferences, and intendments").

V.   Federal Circuit Directions

In its opinion, the Federal Circuit stated,

Because we hold that [*Hash*] did not decide the scope of the easement granted under the 1875 Act, and the abandonment in determination was limited to the facts of that case, we vacate the court's judgment and remand for further consideration of the dual questions whether the easement in this case covers trail use, and if so, whether the railroad terminated its right-of-way by abandonment.

*Ellamae II*, 564 F.3d at 1374.

These directions make clear that our previous opinion has been adopted by the Federal Circuit and is now the law of the case, but that we must additionally consider the scope of the easement.  *See Arizona v. California*, 460 U.S. 605, 618 (1983).  We are directed to consider whether the easement was abandoned *only* if we first decide that trail use is within the scope of the easement.  Accordingly, we first turn to the scope of the easement granted by the 1875 Act.

VI.   Scope of the Easement

We find that trail use is outside the scope of the easement granted by the 1875 Act, irrespective of the existence of railbanking.  Railbanking does not convert trail use into a railroad use.

The legislative history of the 1875 Act indicates that the easement was limited to railroad purposes only.  The 1875 Act states:

> That any railroad company desiring to secure the benefits of this act, shall…file with the register of the land office…a profile of its road; and upon approval thereof…thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way.

1875 Act § 4.

A House Report in connection with legislation that affirmed an 1875 Act grant to certain railroads in Oklahoma and Arizona stated, "[t]he right as originally conferred [under the 1875 Act] and as proposed to be protected by this bill simply grants *an easement or use for railroad purposes*.  Under the present law whenever the railroad passes through a tract of public land the entire tract is patented to the settler or entryman, subject only to this easement."  H.R. REP. No. 59-4777, at 2 (1906).

On May 21, 1909, The U.S. General Land Office published regulations specifying the nature of 1875 Act grants:

> A railroad company obtains only the *right to use the land for the purposes for which it is granted and for no other purpose*, and may hold such possession, if it is necessary to that use, *as long and only as long as that use continues*.

(emphases added) 43 C.F.R. § 2842(a) (1909); 43 C.F.R. §243.2 (1938) (same, verbatim); 43 C.F.R § 2842.1(a) (1976) (same, verbatim).

Additionally, the context in which the Act was passed indicates that the grant was intended for only railroad purposes.  In *Great Northern Railway Co. v. United States,* 315 U.S. 262 (1942), the Court recounts the history of Western settlement and the role of railroad development in facilitating settlement.  The Court points out that outright grants of public land stopped in 1871, but because Congress still wanted to encourage

Western development, it instead granted rights of way to the railroads.  *Id.* at 274.  The Court states, "[t]he Act was designed to permit the construction of railroads through the public lands and thus enhance their value and hasten their settlement."  *Id.* at 272. Thus, the 1875 Act was "the product of a period."  *Id.* at 273.

Taken together, the language of the 1875 Act, the implementing regulations, and context in which the 1875 Act was passed indicate that the easements were granted to a "railroad company" for a "railroad purpose" and for "no other purpose" because Congress' ultimate goal was to promote railroad construction that would in turn promote Western expansion.  Trail use is not a railroad purpose because,

> Although a public recreational trail could be described as a roadway for the transportation of persons, the nature of the usage is clearly different. In the one case, the grantee is a commercial enterprise using the easement in its business, the transport of goods and people for compensation.  In the other, the easement belongs to the public, and is open for use for recreational purposes, which happens to involve people engaged in exercise or recreation on foot or on bicycles.  It is difficult to imagine that either party to the original transfers had anything remotely in mind that would resemble a public recreational trail.

*Preseault*, 100 F.3d at 1542-43.  Also, in *Toews v. United States,* 376 F.3d 1371 (Fed. Cir. 2004), the Federal Circuit stated this about easements grants interpreted under California law: "use of these easements for a recreational trail…is not the same use made by a railroad…The different uses create different burdens…Some might think it better to have people strolling on one's property than to have a freight train rumbling through.  But that is not the point.  The…grant authorized one set of uses, not the other."  *Id.* at 1367-1377.

Recent cases in this Court have reached the same conclusion.  In *Anna F. Nordhus Family Trust v. United States,* 2011 WL 1467940, *9 (Fed. Cl. April 12, 2011), Judge Wheeler stated that "removing tracks to establish recreational trails is not consistent with a railroad purpose, and cannot be regarded as incidental to the operation of trains."  In regard to railbanking, the Court stated that future use was not included in the grant because "there is no evidence of any plan to reactivate the rail service- simply a speculative assertion by Defendant that some resumed rail service could occur in the future.  The transfer of the easement to entities completely unconnected with rail service, and the removal of all rail tracks on the corridor, lead the Court to conclude that any future rail use simply is unrealistic."  *Id.* at 10 (*citing Glosemeyer v. United States,* 45 Fed. Cl. 771, 780-81 (2000)).

Judge Firestone reached that conclusion in *Macy Elevator, Inc. v. United States*, 2011 WL 1319026 (Fed. Cl. April 7, 2011).  In analyzing one of three types of conveyances under Indiana law, she stated, "…the change from railroad traffic to foot traffic is wholly dissimilar to the situation where a utility lays line or pipe next to an operating rail line.  *Id.* at *22.  Judge Firestone also rejected the argument that

railbanking is a railroad purpose because "[t]he fact that restoration of [a] portion of the line would be technically feasible tells us little.  The question is not what is technically possible to do in the future, but what was done in the past."  *Id.* (*quoting Preseault*, 100 F.3d at 1547)).

Judge Wheeler again restated his observations about the different natures of railroad and recreational trail use in *Capreal, Inc. v. United States,* 2011 WL 1740543, *13 (Fed. Cl. May 6, 2011): "a recreational trail use is outside the scope of easements for public travel.  A railroad, or a highway for public travel, has the primary purpose of transporting people and goods…A bicycle trail does not exist to transport people but rather to allow the public to engage in recreation and enjoy the outdoors."  The Court also agreed with previous cases that "the remote possibility of rail service being restored in the future is insufficient to constitute a railroad purpose."  *Id.* at *14 (*citing Toews,* 376 F.3d at 1381; *Nordhus Family Trust*, 2011 WL 1467940 at *9; *Gloseymeyer,* 45 Fed. Cl. at 780).

There is clear consensus that recreational trail use is fundamentally different in nature than railroad use.  The only evidence Defendant has presented concerning reinstatement of a railroad are conclusory statements that RFTA "fully intends to promote and permit resumption of rail service in the future" and that it has "developed several studies investigating use of the Aspen Branch for passenger rail service."  Def. Ex. 15 ¶ 11, 20.  However, there are no definitive plans to resume active rail service.  *See* Oral Argument May 19, 2011, 11:02-11:04.  These self-serving statements cannot be considered reactivation of the easements for railroad use.

VII.   Defendant's Other Arguments on Remand

Defendant raises several arguments concerning abandonment.  Since we have determined that trail use exceeds the scope of the easement, we have no need to address the contingent issue of abandonment.  Moreover, Plaintiff no longer relies on abandonment.  Thus this issue is moot and we need not consider Defendant's arguments respecting the abandonment issue.  Finally, to the extent the government takes issue with other conclusions of the Federal Circuit, those arguments are best addressed to that Court.

VIII.   Conclusion

For the foregoing reasons, **Defendant's Motion for Summary Judgment is DENIED**, and **Plaintiff's Motion for Summary Judgment is GRANTED.**   The Clerk's Office is directed to enter judgment for the Plaintiff.

**IT IS SO ORDERED.**

 s/ Lawrence M. Baskir 
LAWRENCE M. BASKIR
Judge