# In the United States Court of Federal Claims

No. 04-1544L

(Filed: December 9, 2014)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE ELLAMAE PHILLIPS COMPANY,

                 *Plaintiff*,

v.

THE UNITED STATES,

                 *Defendant*,

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Takings; Rails-to-Trails;
Abandonment of
Easement; Calculation of
Damages.

     *Cecilia C. Fex*, Washington, DC, for plaintiff, with whom was *George M. Allen*, Telluride, CO, of counsel.

     *William J. Shapiro*, Trial Attorney, United States Department of Justice, Environment and Natural Resources Division, Sacramento, CA with whom was *Sam Hirsch*, Acting Assistant Attorney General, Washington, DC, for defendant.

BRUGGINK, *Judge*.

## OPINION

     This rails-to-trails takings case arises out of the conversion, by operation of federal law, of a railway easement on plaintiff's property in Aspen, Colorado to a trail for public use. We have already established that creation of the trail exceeded the scope of the easement. *The Ellamae Phillips Co. v. United States*, 99 Fed. Cl. 483, 487 (2011). What remains is resolution of a disagreement between the parties as to how to value the property before and after imposition of the new easement. Specifically, the question is whether the property in its "before" condition must take account of the railway easement. The parties filed cross-motions for summary judgment on the issue. The motions are fully briefed, and oral argument was heard on September 26, 2014. After oral argument, we asked for and received supplemental briefs regarding whether Colorado state law applied to the question of abandonment. We hold that the proper measure of damages is a comparison of the property

without the rail easement to the property with the trail easement.  We thus grant plaintiff's motion for partial summary judgment and deny defendant's motion for partial summary judgment.

BACKGROUND

The land subject to the taking is located in Aspen, Colorado and was originally held by the federal government.  In 1886, the government granted a 200 foot wide railway corridor through the tract to the Grand Valley Railway Company pursuant to the General Railroad Right of Way Act of March 3, 1875, 18 Stat. 482 ("The 1875 Act").[1]  The railroad built a rail line, known as the Aspen Branch Line, the next year.  The subject property, already traversed by the rail line, was transferred by land patent to plaintiff's predecessor-in-interest in 1923.  The Phillips family acquired the property later that decade.[2]

The rail line changed hands a number of times through acquisitions and mergers over the years.  Rail operations ceased on the Aspen Branch Line in the 1980s.  The last entity to hold the easement was the Roaring Fork Railroad Holding Authority ("RFRHA").[3]  On June 30, 1998, RFRHA submitted an application to the Surface Transportation Board ("STB") to convert the railway into a recreational trail pursuant to the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, 97 Stat. 48, which gives authority to the STB to preserve unused railways for future use by converting them to recreational trails if a public or private entity is willing to assume

_____

[1] This case has been the subject of three previous judicial opinions, two from this court and one from the Federal Circuit.  A fuller recitation of the factual background and legal framework of this case can be found in those opinions. *See* 77 Fed. Cl. 378 (2007) ("*Ellamae I*") (holding that the conversion, by operation of federal law, of a railway easement to a recreational trail was a taking); 564 F.3d 1367 (Fed. Cir. 2009) (reversing and remanding, holding that the trial court should consider the issue of the scope of the easement prior to a finding of liability) ("*Ellamae II*"); 99 Fed. Cl. 483 ("*Ellamae III*") (holding that the scope of the railway easement was exceeded by the conversion to a recreational trail easement).

[2] Plaintiff is a limited liability partnership, and its members are the three children of the late Ellamae Phillips.

[3] RFRHA is a Colorado inter-governmental entity regulated by the Surface Transportation Board.

responsibility for the trail in the interim.[4]  *See* 16 U.S.C. § 1247(d) (2014). The STB granted the application and issued a Notice of Interim Trail Use ("NITU") on October 15, 1998, which prevented the abandonment of the easement and allowed for finalization of the trail plan.  The railway was converted, and the corridor is now used as a paved, public bike path.

Plaintiff brought suit here, alleging that the conversion of the railway right-of-way to a public path was a taking of its right to the enjoyment of its unencumbered property, which it would have had absent the conversion to bike path because the rail easement would have terminated.  It is established that use as a bike path exceeded the scope of the easement and that plaintiff's property rights have been taken.  *Ellamae III*, 99 Fed. Cl. at 486-87.  The question remains how to value the property interest taken.  The parties undertook a collaborative valuation process, retaining separate appraisers, but with the aim of reaching a settlement.  They disagree, however, on a key assumption going in to the appraisers' calculus: the condition of the property in its before-taking state.  Plaintiff urges that the proper measure starts with its land in fee simple, unencumbered by any easement; defendant argues that, prior to the NITU and trail conversion, the property was subject to a rail easement, and thus that is the before condition of the land.

DISCUSSION

We decide motions for summary judgment by considering whether there is a "genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c)(1) of the Rules of the United States Court of Federal Claims.  The moving party has the burden of showing that it is entitled to judgment as a matter of law, that is to say that there is no material fact in dispute.  *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). Inferences drawn from the underlying facts should be drawn in favor of the non-moving party.  *See id.* at 655.  The same standard applies to cross-motions; we "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

The Fifth Amendment mandates that, when the United States takes private property for public use, the government must pay "just compensation"

---

[4] This is the process known as "railbanking."

as "reimbursement to the owner for the property interest taken." *United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 633 (1961). The government must pay for whatever interest was taken, putting the owner "in as good a position pecuniarily as if his property had not been taken." *Olson v. United States*, 292 U.S. 246, 255 (1934). Plaintiff must be "made whole but is not entitled to more." *Id.*

What the government has taken in this case is an easement for recreational trail use, a partial taking. The measure of compensation is the diminution in value to the underlying tract caused by the imposition of the easement. *Rogers v. United States*, 101 Fed. Cl. 287, 292 (2011); *see generally United States v. Miller*, 317 U.S. 369, 376 (1943) ("If only a portion of a single tract is taken, the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract."). In order to determine that sum, an appraiser must know what the value of the property was before the taking and compare it to the value after the taking.

Defendant's argument is straight forward. Prior to the railbanking process, plaintiff held a piece of land that was subject to an easement for operation of a railway. Plaintiff now holds a piece of land subject to an easement for recreational trail use. Presumably the difference in value is slight, or at least slighter than an unencumbered tract. Defendant makes much of the fact that the court has not resolved the abandonment question and highlights plaintiff's insistence that it was not relying on a theory of abandonment during the liability phase of the litigation. *See Ellamae III*, 99 Fed. Cl. at 487 ("[W]e have no need to address the contingent issue of abandonment. Morever, Plaintiff no longer relies on abandonment."). Defendant goes further to argue that plaintiff has not established abandonment prior to the conversion from rail to trail use, nor could it. Defendant states, in fact, that RFRHA never intended to abandon its interest in a railway easement because it purchased the Aspen Branch Line in order to preserve the rail corridor both for future public transportation and present recreational trail use. *See* Def.'s Mot. for Summ. J. Ex. 13, ¶¶ 9-10 (Newland Decl.). Defendant points to a RFRHA plan for the possible future construction of a light rail along the corridor to ease local traffic to the Aspen area. *See id.* ¶ 14-15 (Newland Decl.). In defendant's view then, plaintiff cannot establish that the rail easement was abandoned, and the property must be valued in an encumbered before state.

Plaintiff counters that the law in the Federal Circuit is settled: the

issuance of a NITU by the STB is a taking of the possibility that the property will return to an unencumbered state. The operation of the railbanking process, specifically through the NITU, prevents abandonment or other extinguishing of the easement. Plaintiff points out that the focus in a takings damage calculation is what was taken from the owners or, in other words, the loss suffered. The only logical starting point for a damages calculus in these circumstances is the value of the property unencumbered, argues plaintiff. Further, even if we considered the question of abandonment under state or federal law, the easement was abandoned or extinguished due to the contrary use of the trail. There is no question that the Holding Authority intended to abandon the easement under state law, according to plaintiff, because it took an affirmative action "manifesting an intention to abandon the easement," which was its application to the STB to use the corridor for a use other than rail traffic. *Westpac Aspen Inv., LLC v. Residences at Little Nell*, 284 P.3d 131, 137 (Colo. Ct. App. 2011). In sum, plaintiff's view is that, although it need not prove abandonment, the very process of railbanking and subsequent trail creation is proof of intent to abandon. Thus plaintiff concludes that the measure of damages must start with unencumbered property under either legal approach.

We agree with plaintiff that, when the scope of the rail easement was exceeded by the recreational trail, the measure of damages is based on plaintiff's unencumbered enjoyment of its property. No other basis would make plaintiff whole.

The Federal Circuit clarified the fundamental nature of the taking in rails-to-trails cases in its *Caldwell v. United States* decision and succeeding cases. In that case, considering the question of the timing of the taking, the circuit held that the issuance of the NITU, "prevents the operation of state laws that would otherwise come in to effect upon abandonment–property laws that would 'result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners.'" 391 F.3d 1226, 1229 (Fed. Cir. 2004). The clock for statute of limitations purposes begins running when the NITU issues because it is at that point that any recovery of the property unencumbered is prevented, whether temporarily or permanently. *See id.* at 1234, 1234 n.7. It follows that, even when no trail has been created by the time of suit, a taking nonetheless results from the issuance of the NITU. *See Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010).

Justice O'Connor's concurrence in the seminal *Presault I* decision is particularly apt in describing how the law operates in these circumstances:

"The Commission's actions may delay property owners' enjoyment of their reversionary interests, but that delay burdens and defeats the property interests rather than suspends or defers the vesting of those property rights." *Presault v. Interstate Commerce Comm'n*, 494 U.S. 1, 22 (1990) (O'Connor, J. concurring).[5] Plaintiff's right to receive the property back in fee simple if the railroad right-of-way is abandoned is, as Justice O'Connor stated, defeated by the operation of the Trails Act. The logical import of these holdings for the quantum of damages is that the property would be unencumbered absent operation of the Trails Act. The damages inquiry thus starts with the presumption of an unencumbered piece of land. It would be a logical nullity to hold that the only measure of damages is the difference between the value of the two easements when the very law that effected the imposition of the new easement prevented the old one from expiring.

The question of abandonment remains relevant in rails-to-trails cases only when the scope of easement was not exceeded by the trail use. The circuit presumed as much in its instructions to this court on remand. The court directed us to consider whether the recreational use was encompassed in the 1875 Act's grant of easement. Had we answered that question in the affirmative, the court further directed us to consider "whether the railroad terminated its right-of-way by abandonment." *Ellamae II*, 564 F.3d at 1374. We found that the trail use exceeded the scope of the easement and skipped the question of abandonment as unnecessary.[6] *Ellamae III*, 99 Fed. Cl. at 487.

This court has been unanimous in its decisions considering the measure of damages in this context. In *Whispell Foreign Cars, Inc. v. United States*, we held that plaintiff need not show termination of the rail easement because the Trails Act prevents abandonment, which necessarily presumes that the property would be unencumbered but for the operation of the act. 106 Fed. Cl. 635, 642 (2012) (citing *Caldwell* and *Ladd*). In *Rogers v. United States*, we held that abandonment is presumed in this context because the NITU prevents it from occurring. 101 Fed. Cl. 287, 293-94 (2011). Judge Williams

---

[5] The "Commission" referenced in the quote above is the Interstate Commerce Commission, the predecessor to the STB.

[6] A plaintiff could premise its takings theory on abandonment of the rail easement prior to the NITU or the creation of a trail, and plaintiffs have done so in this court, but given the Federal Circuit's holdings in *Caldwell* and its progeny, that is no longer necessary to a finding of liability.

found that the government's insistence that plaintiff needed to prove a common law abandonment under state law was unnecessary under the Trails Act, in part because the federal railbanking statutory scheme subsumes the question.  *See id.* at 293.[7]

In *Howard v. United States*, we considered the question of abandonment under Indiana law, and because of the operation of a state statute, found that the easement at issue was not abandoned.  106 Fed. Cl. 343, 354-61 (2012).  Judge Horn held that the federal government could not escape liability for imposing a new easement even though the original easement had not been abandoned under state law because the Trails Act had, in effect, imposed an easement "in perpetuity."  *Id.* at 367.  We measured the value of interest taken based on an unencumbered property.  *Id.*

Our recent decisions in the *Ladd* case followed suit, determining that damages were to be measured based on an unencumbered state of the property because the "trail use authorized by the NITU exceeds the scope of the Railroad's 1875 Act easements," making the question of abandonment irrelevant.  108 Fed. Cl. 609, 614-15 (2012).  Judge Hodges recognized that abandonment is only reached in these cases when "a court can find that trail use by the general public was an acceptable purpose according to the terms of the easement."  *Id.*  The court went on to order the determination of damages based on the subtraction of the value "of plaintiff's land with easements for recreational trails, from their land without easements–unencumbered property."  110 Fed. Cl. 10, 13 (2013).

In sum, we conclude that the calculation of damages assumes a piece of property completely unencumbered by the prior railroad easement.  It is unnecessary for plaintiff to establish abandonment.

---

[7] Judge Williams also provided an additional rationale for her decision, which was that proving abandonment would "thwart a proper construction" of the deed at issue in that case.  *Rogers*, 101 Fed. Cl. at 294.  In that case, the deed specifically stated that the railway's interest would revert to the holder of the underlying land upon the cessation of rail operation.  *Id.*  This is, contrary to defendant's assertion, not a reason to distinguish *Rogers* from the present dispute.  It was an additional basis to rule for plaintiff, but not strictly necessary to the result.

CONCLUSION

We grant plaintiff's motion for partial summary judgment and deny defendant's motion for partial summary judgment.  The parties are directed to consult and file a joint status report on or before December 23, 2014, proposing further proceedings.


s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge